HOWARD CLARK *v.* MELODY BAR, INC.

[No. 171A11. Filed July 19, 1971.]

---

7.  *The Town of Salem* v. *Goller* (1881), 76 Ind. 291, 293.

*Kenneth A. King,* of Kendallville, for appellant.

*Phyllis G. Poff,* of Auburn, *F. LeRoy Wiltrout,* of Elkhart, for appellee.

LOWDERMILK, J.—This cause arises out of a certain contract, as follows, to-wit:

"THIS AGREEMENT, made in the city of Kendallville, Indiana State of Indiana, this 1 day of July, 1967; between Howard Clark (hereinafter referred to as Company) and Ron Linnie [sic], dba/Melody Bar (hereinafter referred to as Proprietor), WITNESSETH:

"In consideration of the mutual covenants and agreements herein contained, the parties agree as follows:

"1. Proprietor hereby grants unto Company the exclusive rights for one year to install and maintain automatic music equipment upon the premises located at 121 South Main St., Kendallville, Indiana.

"2. Company shall install upon said premises the following music equipment:

    1—Rowe AMI Music Merchant-coin operated phonograph

    1—Rowe AMI Phon-Vue Film machine.

"3. During the term and any continuation thereof:

"a. Company shall open the coin containers of such equipment weekly.

    The Company shall be entitled to a weekly minimum of forty dollars ($40). The excess, in the contents thereof, shall be divided equially [sic] between the Company and the Proprietor.

"b. * * *

"c. * * *

"d. * * *

"e. * * *

"4. Unless either party shall receive written notice of termination no less than sixty days prior to the end of the term thereof, this agreement shall automatically continue

for an additional period of one year and from year to year thereafter until written notice of termination is received by either party no less than sixty days prior to the end of any such year. Except as provided herein and except for a breach hereof, this agreement shall be irrevocable by the parties hereto.

"5. * * *

"6. The parties hereby certify their authority to enter into this agreement.

"7. * * *

"8. The relationship between the parties created by this agreement is that of independent contractors and neither party may directly or indirectly act as agent or representative of the other nor bind the other in any way.

"9. * * *

> Ron Timmons, Proprietor
> 121 South Main St., Kendallville, Ind.
> Howard Clark Company."

The defendant is a corporation doing business as a tavern in Kendallville, Indiana, with the sole shareholders being Norman and Doris Gillian. In April of 1967, there was a conditional sales contract entered into between the Gillians and one Ronnie Timmons, by the terms of which Timmons was to purchase the shares of stock owned by the Gillians. However, this transfer was not to take place until a certain part of the purchase price was paid and the Gillians remained the sole shareholders at all times for purposes of this appeal.

Ronnie Timmons was made secretary-treasurer of the corporation, and also a member of the Board of Directors. His duties immediately became those of agent of the corporation and manager of the tavern. He managed the tavern, which management included taking care of the money and receipts, making purchases and selling merchandise, as well as purchasing other necessities to maintain the business in good operation. Timmons determined the tavern needed new music equipment and made mention of this fact to the president, Norman J. Gillian, who replied "That's very good." With this authority, Timmons then contacted Howard Clark, the plain-

tiff-appellant, and entered into the aforesaid contract for the installation of automatic music equipment.

The record discloses this automatic music equipment remained in the place of business from the date of installation to December 12, 1967, on which date the collection report of the corporation's share of the profits from the box was signed by the then-president, Norman Gillian. This took place after Timmons resigned as treasurer of the corporation on November 16, 1967, which resignation apparently was precipitated by the corporation of which Norman Gillian was president refusing to assign shares of stock to Timmons, as part of the agreement entered into at the time Timmons took over the operation and management of the business.

Appellant Howard Clark brought his action for breach of contract against the appellee corporation on February 19, 1968. The tavern was closed for remodeling purposes in January, 1967, and Norman Gillian informed the appellant that he should remove the automatic music equipment so it would not be damaged. During the time the tavern was closed appellant talked with Norman Gillian, requesting him to put the automatic music equipment back in the tavern, and was informed by Gillian that he did not want to talk about it. However, the corporation later authorized the installation of other automatic music equipment by another company.

The complaint was in one paragraph for breach of contract, and alleged that on July 1, 1967, the plaintiff and defendant entered into a certain contract of writing for the installation of the automatic music equipment for a period of one year and appellee was to pay a weekly minimum of $40.00 for the use of said equipment, with the parties to split evenly the proceeds exceeding $40.00.

The complaint alleges further that the plaintiff-appellant had fully complied with his terms of the contract and the corporation had refused to perform.

And further, the appellee corporation had accepted the property under the terms of the contract for a period of nine-

teen weeks, at which time they cancelled and now refuse to permit appellant to perform his part of the contract, and further alleged appellant's damage in the amount of $1,310.00.

The contract was made an exhibit and a part of the complaint and was executed by Ron Timmons as proprietor and Howard Clark, "Company."

Defendant-appellee filed answer in two paragraphs, the first being under Trial Rule 8(B) and the second being under Trial Rule 9.2(B).

The case was tried to the court without a jury and at the close of appellant's evidence, appellee filed a motion for judgment on the evidence, which motion was sustained by the court.

Thereafter appellant filed a motion to reconsider ruling on motion for judgment on the evidence, which was overruled by the court on September 21, 1970.

The trial court decided the issues adversely to the appellant and entered the following judgment:

### "JUDGMENT

"This cause having been submitted to the Court for trial, and the Court having sustained the Motion for Judgment on the Evidence made by the defendant at the close of plaintiff's evidence;

"IT IS HEREBY ORDERED, ADJUDGED AND DE-CREED that the plaintiff take nothing by his complaint.

/s/ ——————————————————

John C. Hagen, Judge
Noble Circuit Court

September 29, 1970"

On September 29, 1970, appellant filed a written motion to correct errors and on the 2nd day of November, 1970, filed an amended motion to correct errors. The motion and amended motion to correct errors were by the court overruled on December 9, 1970. Each of appellant's motions to correct errors have been certified by the Clerk separately in the transcript, the amended motion reading as follows:

## "AMENDED MOTION TO CORRECT ERRORS

"The plaintiff moves the Court to take such steps as may be required to correct the errors herein shown:

"1. The Court erred in sustaining the Motion for Judgment on the evidence after plaintiff had made out a prima facie case and was not rebutted by defendant;

"2. The plaintiff, Howard Clark, should have been granted a judgment against the defendant on the evidence presented at the trial;

"3. That the decision of the court was not supported by sufficient evidence and is contrary to the evidence presented in that plaintiff made out a prima facie case which was not rebutted by defendant;

"4. That the weight of the evidence is over-whelmingly in support of the plaintiff, and judgment is therefore against the weight of the evidence;

"5. The plaintiff, if evidence had been presented by the defendant, would have been entitled to judgment against the defendant;

"6. That the decision of the court is contrary to law in that the weight of the evidence is over-whelmingly in favor of plaintiff;

### "Statement of Facts

"a. Ronnie L. Timmons testified that he had purchased the Melody Bar, Inc., as shown by Exhibit B, and was treasurer of the Corporation when he signed the agreement with Howard Clark, and the agreement was approved by Norman Gillian, president of Melody Bar, Inc., That Ronnie L. Timmons further testified that Howard Clark had a good contract as shown by Exhibit C and should be paid, he further testified that he operated the Melody Bar, Inc., and made all purchases.

"b. Howard Clark testified as to the transactions and the amount due him.

"c. On May 27, 1969, after plaintiff rested, Motion for Judgment on Evidence was filed and sustained. Motion to Reconsider Motion for Judgment on the Evidence was filed June 2, 1970, and over-ruled September 21, 1970. That judgment on the evidence was entered against plaintiff on the 29th day of September, 1970. This was an error after plaintiff had made out a prima facie case.

"Plaintiff asks that a new trial be granted on all issues." The Clerk's certificate was duly executed and affixed thereon on December 17, 1970.

On November 25, 1970, appellee filed verified motion to dismiss plaintiff's amended motion to correct errors. The court overruled this motion to dismiss plaintiff's amended motion to correct errors on the same date that it also overruled the amended motion to correct errors.

This brings this court face to face with the problem of determining the new Rules of court and their application to certain cases. It has been said that "fools rush in where angels fear to tread" and yet, with this in mind, this court is going to write on questions not mentioned nor raised by either party to this litigation.

Our Supreme Court has said, in *Morgan County Rural Electric Membership Corporation* v. *Public Service Company of Indiana* (1970), 253 Ind. 541, 255 N. E. 2d 822:

> "An appeal court in deciding a case on a point not raised in the trial court, must use discretion and runs then a risk of doing an injustice. We point that out in *J. I. Case Co.* v. *Sandefur* (1964), 245 Ind. 213, 197 N. E. 2d 519, when the Appellate Court did this and was in error. We recognize the human frailties that judges have of wanting to appear to have beheld something in the law that the attorneys overlooked."

Nevertheless, we feel compelled to point out the fact that a motion for a judgment on the evidence is reserved for jury trials and is not to be used when a trial is before only a judge, as was the situation in this cause. A judgment on the evidence is covered by Trial Rule 50 of our Indiana Rules of Procedure, and the rule specifically says that it is to be used either before a jury or an advisory jury. In volume 3 of Harvey's Indiana Practice at page 369, it is stated:

> "The rule relates *exclusively to jury trials*. A motion under this Rule would be inappropriate in an action tried by the court if for no other reason than by it counsel would be

asking the court to direct itself to do a certain thing." (Our emphasis.)

Since there was no jury in the trial court a motion for a judgment on the evidence was not a proper motion to file, but rather, a motion under Trial Rule 41(B) should have been used. Trial Rule 41(B) authorizes a motion for involuntary dismissal on behalf of the defendant after plaintiff has completed his presentation of evidence before a court *without a jury*. This problem is not one that is jurisdictional in nature, nor will we serve as the attorneys for the two parties. We shall, however, dispose of this cause on the merits, for the reason that we do recognize that the new Rules of Procedure had only been in existence twelve days at the time of this trial and there may have been some confusion as to which motion to file. In the future we shall not be so liberal and such mistakes can and will prove to be costly. We have, however, taken the opportunity to distinguish between the two motions as to when they are to be used and also that the standards for sustaining either motion are the same. It is for this reason that we will consider this appeal as if the proper motion, being that of Trial Rule 41(B), had been filed and sustained, and from which this case now comes before us. The standard for review is the same and we are left with no choice but to consider this cause in this manner if we are to review it on the merits.

West's Indiana Law Encyclopedia, volume 7, Corporations, § 193, *Contracts,* p. 34, states the following:

"... Unless his authority is specially restricted, a general or managing officer or agent may enter into contracts on behalf of the corporation with relation to matters arising in the ordinary course of the corporate business, and his authority may be presumed." *Crowe* v. *Gary State Bank* (1942), 123 F. 2d 513.

Also, in said volume of I.L.E., at page 43, § 196, it is stated:

"Where a corporation, through its proper officers, takes and retains the benefits of the unauthorized act or contract

of an officer or agent and fails to repudiate the transaction and offer restitution within a reasonable time, it thereby ratifies and becomes bound by the act or contract, . . ." See *Harnischfeger Corp.* v. *Hoosier Mortg. Service* (1950), 182 F. 2d 118.

In the latter case cited, Hueber was an agent for the defendant Hoosier Mortgage Service and was placed in charge of the Fort Wayne, Indiana office. Hueber testified that, as manager, in general charge of the defendant's mortgage business in the Fort Wayne territory, he had authority to and did sign checks on the defendant's checking account and that he had authority to sign the name of the defendant to F.H.A. applications and other papers concerning loans; that he was given this authority in 1946 when he was placed in the Fort Wayne branch office; and that he collected money, deposited it, disbursed part of it, forwarded part of it to the Indianapolis office, and made payments from defendant's funds to the mortgagees.

In the trial of that cause, Hueber's authority to make construction loans was not questioned and the court said, in discussing such authority on Hueber's part:

"His authority to make the loan necessarily included the authority to do acts which were incidental to, or reasonably necessary in making such loan. [Citing *American Telephone & Telegraph Co.* v. *Green,* 164 Ind. 349, 73 N. E. 707; and other cases]"

There was evidence in the case at bar admitted into the record from the witness Clark that he had sustained damages from $2,000 to $2,500 as the result of the defendant corporation's removing his automatic music equipment from the tavern and refusing permission to replace it after the tavern had been remodeled.

The trial court, in ruling on a motion for dismissal or one for a judgment on the evidence, must consider all of the evidence and reasonable inferences in favor of the party against whom the motion is directed to be true, and to deter-

mine if there is substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed.

It is clear from the record that the appellant introduced ample evidence of probative value to sustain his material allegations. His allegations were that a contract had been entered into between himself and Ron Timmons, agent and operator of Melody Bar, Inc., for the installation of music equipment, which was acquiesced in by the defendant corporation, which received profits from the agreement. To substantiate the material allegations of his complaint the appellant has introduced into evidence the contract which was signed by Ron Timmons, agent for the defendant; and has alleged that the terms of the contract have been broken by the defendant corporation, making the defendant corporation liable to him for breach of contract. To substantiate these allegations the appellant has shown in the record that the music equipment has been removed from the tavern, contrary to the terms of the contract; that Timmons was agent for and had authority to enter binding agreements for the tavern; that Gillian knew Timmons, as agent for the corporation, had entered into an agreement with the appellant to install the music equipment, and that the tavern had been receiving remuneration from the proceeds of the music equipment; and that Gillian had, personally, as president of the corporation, executed receipts for the corporation's share of the music equipment profits.

Considering the facts most favorable to the appellant, as a result of the motion filed and the judgment, and especially considering the facts as set out in this opinion as proven by the appellant, this court is of the opinion that appellant produced sufficient evidence in his case in chief that the appellee's motion, which should have been under Trial Rule 41 (B), but which was designated a motion for a judgment for defendant at the close of plaintiff's evidence, should have been overruled. The court is of the further opinion that speci-

fication 1 of appellant's motion to correct errors contains surplusage, but was adequate to inform the court of the error claimed by appellant and that the court erred in not sustaining appellant's amended motion to correct errors as to specification 1 thereof.

It is a well established principle in Indiana that where it is determined that the trial court committed reversible error on one point, this court is not required to discuss other points or questions in a given case. *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N. E. 2d 127; *Board of Comm. etc.* v. *Flowers* (1964), 136 Ind. App. 597, 201 N. E. 2d 571.

The court having committed reversible error, this cause is now ordered remanded to the trial court for a new trial.

Sullivan, P.J., Buchanan and Robertson, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 481.